IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHILIP JAMES,

    Plaintiff,                    No. CIV S-08-1032 GGH

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                              ORDER

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the defendant.

BACKGROUND

        Plaintiff, born July 30, 1954, applied for disability benefits on February 22, 2005. (Tr. at 54-56.) Plaintiff initially alleged he was unable to work since August 24, 1999, due to a back injury. (Tr. at 42, 54). After his claim was denied, on reconsideration he also sought disability benefits based on right leg pains, headaches and depression. (Tr. At 34).

In a decision dated February 22, 2007, ALJ Sandra K. Rogers determined that plaintiff was not disabled.[1]  The ALJ made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

    2.    The claimant has engaged in substantial gainful activity since August 24, 1999, his alleged onset date.  However, he has not engaged in substantial gainful activity continuously throughout the period at issue (20 CFR 404.1520(b) and 404.1571 et seq.).

    3.    The claimant has had the following severe impairments: degenerative disc disease; and a lumbosacral strain syndrome (20 CFR 404.1520(c)).

    4.    The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

|   |   |   |
|---|---|---|
|   |   | 404.1526). |
|   | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has had a residual functional capacity as follows: able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; unable to climb ladders, ramps and scaffolds; and limited to occasional climbing, stooping, kneeling, crouching, and crawling. |
|   | 6. | The claimant has been unable to perform his past relevant work (20 CFR 404.1565). |
|   | 7. | The claimant is 52 years old, which is defined as an individual closely approaching advanced age (20 CFR 404.1563.) |
|   | 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
|   | 9. | The claimant has acquired work skills from past relevant work (20 CFR 404.1568). |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404,1566 and 404.1568(d)). |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 1999 through the date of this decision (20 CFR 404.1520(g)). |

(Tr. at 14-18.)

ISSUE PRESENTED

Plaintiff raises one issue:   Whether the ALJ erred by not finding that he had a severe mental impairment.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

3

1  Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v.
2  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence
3  as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d
4  625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ
5  is responsible for determining credibility, resolving conflicts in medical testimony, and resolving
6  ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
7  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
8  rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).
9  ANALYSIS
10            Plaintiff contends that the ALJ failed to find that he had a severe mental
11 impairment because the medical evidence showed that he could not perform basic work
12 activities. See Plaintiff's Motion, p. 4: 10-22.  Plaintiff also contends that the ALJ improperly
13 used his lack of psychiatric care against him.
14            At the second step of the disability analysis, an impairment is not severe only if it
15 "would have no more than a minimal effect on an individual's ability to work, even if the
16 individual's age, education, or work experience were specifically considered." SSR 85-28.  The
17 purpose of step two is to identify claimants whose medical impairment is so slight that it is
18 unlikely they would be disabled even if age, education, and experience were taken into account.
19 Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis
20 screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th
21 Cir. 1996).  At this step, the ALJ may decline to find a severe impairment "*only* if the evidence
22 establishes a slight abnormality that has no more than a minimal effect on an individual's ability
23 to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).
24            The ALJ found that with regard to the period at issue, the record did not
25 demonstrate any psychiatric hospitalizations or regular mental health treatment. (Tr. at 14).  The
26 ALJ found that plaintiff's activities of daily living were limited by physical factors rather than

4

1 any mental impairment. (Tr. at 14). The ALJ also found that at the hearing, plaintiff seemed to
2 retain an adequate ability to interact appropriately with other people as well as adequate
3 concentration and memory. (Tr. at 14). Finally, the ALJ found that "the report of a December
4 2005 psychiatric consultative examination shows little objective evidence of mental impairment,
5 and the examiner opines that the claimant has no significant impairment in performing work-
6 related mental functions (Exhibit 10F)." (Tr. at 15).

7 The court has scrutinized this issue closely because it does not appear that
8 plaintiff was simply making up allegations of mental issues (OCD and panic disorder) as he had
9 a documented history of such in the 1980's – long before his present allegations of disability. See
10 (Tr. 383-403). Moreover, and again, the finding of a "severe" impairment is somewhat of a
11 misnomer – a condition does not have to be very serious before it is "severe." However, the
12 distance age of the psychological treatment from the period at issue, and their relative lack of
13 effect on plaintiff's ability to work at that time, or since that time, make the mental history of
14 marginal relevance in the twenty-first century.

15 The record reflects that on December 10, 2005, Dr. Soliman performed a
16 comprehensive psychiatric evaluation of plaintiff. (Tr. at 427-430). Dr. Soliman noted that
17 plaintiff stated that his chief complaints were depression and obsessive-compulsive disorder.
18 (Tr. at 427). Plaintiff told Dr. Soliman that he had been depressed since junior high school, but
19 his depression had gotten worse since he was not working. (Tr. at 427). Plaintiff stated that his
20 primary care physician had prescribed Celexa.[2] (Tr. at 428); see Physicians' Desk. Plaintiff told
21 Dr. Soliman that he had obsessive compulsive problems because he washed his hands a lot and
22 checked the doors and went around the block to make sure that he had closed his garage door.
23 (Tr. at 428).

24 \\\\\

---

[2] Celexa is a medication used to treat depression, anxiety disorders and obsessive
compulsion disorders. See www.nih.gov/health/publications/anxiety-disorders.

In the section of his report designating his DSM-IV diagnosis of plaintiff, Dr. Soliman wrote:

> Axis I: rule out depressive disorder, NOS.
> Axis II: Deferred.
> Axis III: Low back pain.
> Axis IV: Job problems.

(Tr. at 429).

In his discussion of plaintiff's prognosis, Dr. Soliman stated that plaintiff was likely to improve within the next 12 months or so with an appropriate management plan. (Tr. at 430). He stated that plaintiff had an underlying medical problem which caused him to have some depressive symptoms. (Tr. at 430). "Seemingly, it has improved as he states himself and he performed well throughout the mental status examination." (Tr. at 430). Dr. Soliman found no evidence of decompensation. (Tr. at 430).

Regarding his functional assessment of plaintiff, Dr. Soliman concluded that plaintiff was alert and oriented with good concentration, good registration, good recall and good short and long term memory. (Tr. at 430). Dr. Soliman stated that plaintiff should be able to perform simple and repetitive tasks. (Tr. at 430). He determined that plaintiff could accept instructions from supervisors and interact positively with coworkers and the public. (Tr. at 430). He determined that plaintiff was able to perform work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workday/workweek without interruptions from a psychiatric condition. (Tr. at 430). Dr. Soliman concluded that plaintiff was "obviously doing well overall" and he believed that he should be able to function in a work-like site without decompensation of his psychiatric illness. (Tr. at 430).

Dr. Soliman determined that plaintiff's GAF was 65. (Tr. at 430) GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 61-70 indicates "some mild

symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV at 32.

On January 19, 2006, psychiatrist E. Harrison reviewed the record and completed a Psychiatric Review Technique Form (PRTF) and a functional capacity assessment. (Tr. at 419-426). On the PRTF form, Dr. Harrison wrote that plaintiff had affective and anxiety related disorders. (Tr. at 419). He determined that the affective disorder caused plaintiff to suffer from sleep disturbance, decreased energy, feelings of guilt or worthlessness and/or difficulty concentrating or thinking. (Tr. at 420). He determined that plaintiff's anxiety disorder caused him to suffer from recurrent severe panic attacks and recurrent obsessions or compulsions. (Tr. at 421). Dr. Harrison determined that these disorders caused plaintiff to suffer a moderate degree of limitation on his activities of daily living and in maintaining concentration, persistence or pace. (Tr. at 422).

On the functional capacity assessment, Dr. Harrison indicated that plaintiff was not significantly limited in eighteen of twenty categories of work related mental functioning. (Tr. at 424-425). Dr. Harrison indicated that plaintiff was moderately limited as to two categories, i.e. the ability to maintain attention and concentration for extended periods and the ability to respond appropriately to changes in the work setting. (Tr. at 424-425). Dr. Harrison concluded that plaintiff was "able to learn, carry out, sustain and adapt to only simple [substantial gainful activity]." (Tr. at 426).

At the hearing, a vocational expert testified that plaintiff had previously worked as a psychiatric aid and groundskeeper. (Tr. at 482). Based on the limitations on plaintiff's physical abilities caused by his back problems, the expert concluded that plaintiff could not perform plaintiff's past work. (Tr. at 482). The expert determined that someone with plaintiff's job skills and physical limitations could perform semiskilled, light work such as working in a social services setting or as a day care worker. (Tr. at 483-484). When asked what types of jobs

1 were available to someone with plaintiff's physical limitations who could perform only simple,
2 repetitive tasks, the expert testified that plaintiff could not perform any of the jobs he had listed.
3 (Tr. at 484). However, upon further questioning from the ALJ, the expert testified, "Well,
4 depends on how you down to simple, repetitive tasks. I would say jobs such as mail clerk would
5 be basic job, 209.687-026. It's light, SVP 2, about 10,000 California. Cannery worker is pretty
6 basic, 529—." (Tr. at 484). The expert testified, "I think it depends on how you, Judge, how you
7 want to define simple, repetitive tasks but those are kind of basic jobs that are not particularly
8 complicated." (Tr. at 485). When asked by plaintiff's counsel whether there were any light,
9 unskilled jobs that had a sit/stand option, the expert testified that such jobs would include office
10 helper and cashier. (Tr. at 486).

11 "Under Step 2, the applicable regulations state that '[a]n impairment or
12 combination of impairments is not severe if it does not significantly limit [a claimant's] physical
13 or mental ability to do basic work activities.' 20 C.F.R. § 404.1521(a)." Edlund v. Massanari,
14 253 F.3d 1152, 1159 (9th Cir. 2001). "'Basic work activities' are defined as including such
15 capabilities as use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to
16 supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with
17 changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6)." Id.

18 Dr. Soliman's report indicates that plaintiff was capable of performing basic work
19 activities. He found that plaintiff could accept instructions from supervisors and interact
20 positively with coworkers and the public. Dr. Soliman made no specific findings regarding
21 plaintiff's capability of using judgment and dealing with changes in a routine work setting.
22 However, his statements that plaintiff was alert, oriented with good concentration, good
23 registration, good recall and short and long term memory, and capable of regular attendance
24 clearly indicate that Dr. Soliman felt that plaintiff was capable of using judgment and dealing
25 with changes in a work routine setting. Dr. Soliman's conclusion that plaintiff was "obviously
26 doing well overall" and should be able to function in a work like setting demonstrate that he

thought that plaintiff could perform basic work activities. The fact that Dr. Soliman found that plaintiff could perform simple, repetitive work also demonstrates his opinion that plaintiff was capable of performing basic work activities.

In his report, Dr. Harrison found that plaintiff's ability to respond appropriately to changes in the work setting was moderately limited. However, Dr. Harrison did not examine plaintiff, as did Dr. Soliman. The ALJ was entitled to defer to the examining physician's report regarding this matter. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). In addition, the fact that Dr. Harrison also found that plaintiff could perform simple, repetitive work suggests that he found plaintiff capable of performing basic work activities despite the limitations on his ability to respond to changes in the work setting.

Finally, plaintiff argues that the ALJ's use of his lack of treatment as a means to reject the opinions of Dr. Harrison and Dr. Soliman failed to comply with the standards established by the rulings and case law. Plaintiff's Motion, p. 5: 23-26. However, plaintiff cites no established rulings or case law to support this point. A claim barely contended, unsupported by explanation or authority may be deemed waived. Northwest Acceptance Corp. v. Lynwood Equip., Inc., 841 F.2d 918, 923-24 (9th Cir. 1996). Because this argument is supported by no legal authority, the court deems it waived.

For the reasons discussed above, the court finds that the ALJ's finding that plaintiff did not have a severe mental impairment was based on proper standards and substantial evidence.

Accordingly, plaintiff's Motion for Remand or Summary Judgment is DENIED; and defendant's Cross Motion for Summary Judgment is granted; the Clerk is directed to enter Judgment for the defendant.

DATED: 06/18/09                                   /s/ Gregory G. Hollows

                                                  _____
                                                  GREGORY G. HOLLOWS
                                                  U.S. MAGISTRATE JUDGE

jame.ss